UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NAVISTAR, INC.,

   Plaintiff,

     v.

LISA P. JACKSON, Administrator, United States Environmental Protection Agency, *et al.*,

   Defendants.

Civil Action No. 11-769 (CKK)

MEMORANDUM OPINION
(January 17, 2012)

Plaintiff Navistar, Inc., filed suit against Lisa P. Jackson, Administrator of the United States Environmental Protection Agency, and the EPA itself ("Defendants" or "EPA"), seeking to force the EPA to recall Model Year 2010 heavy-duty diesel engines equipped with liquid, urea-based selective catalyst reduction ("SCR") technology for failing to comply with emissions standards promulgated under the Clean Air Act, 42 U.S.C. § 7401, *et seq*. The EPA moved for summary judgment on the basis that Plaintiff's Complaint fails to state a claim for relief. Defs.' Mot. for Summ. J Dismissing Compl. for Failure to State a Claim upon which Relief may be Granted, ECF No. [23]. Navistar moved for discovery pursuant to Federal Rule of Civil Procedure 56(d). Pl.'s Mot. for Disc. Pursuant to Fed. R. Civ. P. 56(d), ECF No. [14]. Cummins Inc., Daimler Trucks North America LLC, Detroit Diesel Corp., Mack Trucks, Inc., and Volvo Group North America, LLC, which manufacture the engines in question and/or sell trucks equipped with the engines, moved to intervene. Mot. to Intervene, ECF No. [13]. All three motions have been fully briefed and are ripe for determination. For the reasons states below, the

Motion to Intervene shall be GRANTED. Navistar's Motion for Discovery Pursuant to Federal Rule of Civil Procedure 56(d) shall be DENIED, and Defendants' Motion for Summary Judgment Dismissing Complaint for Failure to State a Claim upon which Relief may be Granted shall be GRANTED.[1]

## I. BACKGROUND

*A.    Statutory Framework*

Under Section 202 of the Clean Air Act, the EPA is authorized to promulgate emissions standards for new motor vehicles and engines. *See* 42 U.S.C. § 7521(a)(1);[2] Pl.'s Ex. 1 (Control of Air Pollution from new Motor Vehicles: Heavy-Duty Engine and Vehicle Standards and Highway Diesel Fuel Sulfur Control Requirements, 66 Fed. Reg. 5002). The Act further requires the EPA to test all new motor vehicles and engines and issue certificates of conformity with the applicable regulations. § 7525(a)(1); *see* 42 C.F.R. §§ 86.094.21-30 (regulating the certification process); Pl.'s Ex. 2 (2/18/2009 Certification Requirements for Heavy-Duty Diesel Engines Using Selective Catalyst Reduction (SCR) Technologies). All new engines and vehicles must be certified by the EPA before they are sold, offered for sale, imported, or otherwise introduced into commerce. § 7522(a)(1). Section 207(c)(1) provides a mechanism for the recall of engines when the EPA finds previously certified engines do not conform to emissions standards:

---

[1] Although the Court's conclusion is based on the record as a whole, the Court's analysis focused on the following documents, organized by the respective motion:
- [11] Defs.' Mot. for Summ. J.; [21] Pl.'s Opp'n; and [23] Defs.' Reply.
- [13] Mot. to Intervene; [18] Pl.'s Opp'n; and [20] Movant's Reply.
- [14] Pl.'s Mot. for Disc.; [23] Defs.' Opp'n; and [24] Pl.'s Reply.

[2] Unless otherwise noted, all section references are to Title 42 of the United States Code.

> If the Administrator determines that a substantial number of any class or category of vehicles or engines, although properly maintained and used, do not conform to the regulations prescribed under section 7521 of this title, when in actual use throughout their useful life (as determined under section 7521(d) of this title), he shall immediately notify the manufacturer thereof of such nonconformity, and he shall require the manufacturer to submit a plan for remedying the nonconformity of the vehicles or engines with respect to which such notification is given. The plan shall provide that the nonconformity of any such vehicles or engines which are properly used and maintained will be remedied at the expense of the manufacturer. If the manufacturer disagrees with such determination of nonconformity and so advises the Administrator, the Administrator shall afford the manufacturer and other interested persons an opportunity to present their views and evidence in support thereof at a public hearing. Unless, as a result of such hearing the Administrator withdraws such determination of nonconformity, he shall, within 60 days after the completion of such hearing, order the manufacturer to provide prompt notification of such nonconformity in accordance with paragraph (2).

§ 7541(c)(1).

Section 304 of the Clean Air Act provides that private citizens can maintain a civil action "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary." 42 U.S.C. § 7604(a)(2). This section further provides district courts with jurisdiction to "order the Administrator to perform such act or duty." *Id.*

  B.  *Factual Background*

Navistar, formally known as International Truck & Engine Company, manufactures and markets a variety of diesel engines, trucks, and service vehicles. Compl. ¶ 19. Putative Intervenors Cummins, Detroit Diesel, and Mack Trucks manufacture diesel engines. Putative Intervenors Daimler, Mack Trucks, and Volvo manufacture and sell heavy duty trucks outfitted with diesel engines. Mot. to Intervene at 3.

The dispute in this case centers around emissions control technology in diesel engines.

Navistar uses exhaust gas recirculation ("EGR") technology to control emissions, particularly nitrogen oxide emissions. Compl. ¶ 89. The Putative Intervenors manufacture and sell diesel engines utilizing urea-based selective catalyst reduction ("SCR") technology. Mot. to Intervene at 3. Navistar alleges that Model Year 2010 SCR engines certified by the EPA as being compliant with applicable emissions standards actually violate emissions standards when in use on the road. Compl. ¶¶ 6-11. Navistar further alleges that the EPA has determined "that a substantial number of [Model Year] 2010 SCR-equipped engines are not designed consistent with their certificates of conformity, do not meet maintenance requirements, or otherwise 'do not conform to the regulations prescribed under section 7521 [CAA § 202] . . . when in actual use throughout their useful life." *Id.* at ¶ 13. Therefore, Navistar contends, under the Clean Air Act the EPA is required to order a recall of the relevant engines.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials); or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). When considering a motion for summary judgment, the court may not make credibility determinations or weigh the evidence; the evidence must be analyzed in the

light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted).

### III.  MOTION TO INTERVENE

The Putative Intervenors move to intervene as of right under Rule 24(a)(2), or permissively under Rule 24(b)(1)(B).  For purposes of this motion, the Court presumes the well-pleaded allegations in the Complaint are true.  *SEC v. Prudential Secs. Inc.*, 136 F.3d 153, 156 n.4 (D.C. Cir. 1998).  In order to intervene as of right, the movant must demonstrate "an interest relating to the property or transaction that is the subject of the action," and that "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Rule 24(a)(2).  The Court of Appeals has identified four requirements for intervention as a matter of right: (1) the application to intervene must be timely; (2) the putative intervenors must have a "legally protected" interest in the action; (3) the action must threaten to impair the putative intervenors' interest in the action; and (4) no existing party to the action adequately represents the putative intervenors' interest.  *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008).  The putative intervenors must further establish that they have constitutional standing to participate in the action, *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009), although this inquiry is subsumed in the general inquiry under Rule 24(a).  *See Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 n.5 (D.D.C. 2010).

    *A.*    *Timeliness*

Although the motion to intervene was filed nearly two and one half months after the

Complaint was initially filed, the motion was filed less than two weeks after Defendants filed their responsive pleadings, and before any discovery or substantive progress had been made in the case. Navistar does not dispute that the motion to intervene was filed in a timely manner.[3]

    *B.    Interest*

Even though the disposition of this case ultimately turns on a question of statutory interpretation, the dispute has its roots in the EPA's certification of diesel engines utilizing SCR technology as compliant with emissions standards imposed under the Clean Air Act. Navistar commits the bulk of its Complaint to describing in detail the purported flaws in these engines. Navistar even seeks significant discovery relating to "the actual or potential non-conformance of [Model Year] 2010 or later SCR engines with their certificates of conformity," including "any emissions-related testing," "any mandatory or voluntary recall[s]," and "any other actual or proposed action to address any non-conformity, failure, problem, malfunction, production or design defect, or non-compliance." Pl.'s Mot. for Disc., Levine Decl. ¶ 12. Ultimately, Navistar's goal in this litigation is to obtain a court order requiring the EPA to recall the engines manufactured and sold by the putative intervenors, and the movants have a sufficient interest to support intervention as a matter of right.

    *C.    Impairment of Interest and Standing*

Simply put, Navistar alleges that the EPA's certification and failure to recall the SCR based engines has been favorable to the putative intervenors. Navistar seeks to reverse what it views as illegal favoritism towards companies producing engines with SCR technology,

---

[3] Although Plaintiff opposes the motion, Defendants take no position. Mot. to Intervene at 2 n.2.

including the putative intervenors.  A decision in favor of the Plaintiff in this case would, at a minimum, force the movants to contest the EPA's determination that their engines do not conform to emissions standards.  *See* § 7541(c)(1).  In the worst case scenario, movants will be forced to recall all Model Year 2010 diesel engines utilizing SCR technology.  *See id.*  "[A]s a practical matter," an adverse decision would force movants to expend significant resources to try and keep their engines on the road.  "Regardless of whether the [movants] could reverse an unfavorable ruling. . . there is no question that the task of reestablishing the status quo if [Plaintiff] succeeds in this case will be difficult and burdensome."  *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003).  Therefore the movants satisfy the third requirement for intervention as of right.

### D. *Adequacy of Representation*

The only remaining question is whether the EPA adequately represents the putative intervenors' interests in this action.  Courts have often concluded governmental entities do not adequately represent the interests of private parties seeking to intervene because the private parties have "a more narrow and 'parochial' financial interest not shared" by the government.  *Fund for Animals*, 322 F.3d at 737 (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986)).  The EPA is unlikely to, and arguably should not, afford the movant's "discrete and particularized interests the same primacy" as movants would themselves.  *Wildearth Guardians*, 272 F.R.D. at 15.  Therefore, the putative intervenors are entitled to intervene in this action.

The putative intervenors have satisfied the four requirements for intervention as of right as set forth by the Court of Appeals and therefore their motion is granted.  Given the Court's

disposition of Defendants' summary judgment motion, the Court need not evaluate Plaintiff's proposed limitations on the intervenors' involvement in the case. Moreover, since the Intervenors indicated their intent to join Defendants' motion, which the Court is granting, Intervenors' request to submit additional briefing regarding summary judgment and Plaintiff's request for discovery is denied.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The parties agree that the fundamental dispute in this case is whether the EPA has made a determination that Model Year 2010 diesel engines using SCR technology "do not conform to the regulations prescribed under section 7521 [CAA § 202] . . . when in actual use throughout their useful life." Plaintiff argues this is a factual question that can only be resolved through discovery. Defendants contend that, according to the EPA's definition of "determination," such a determination has not been made, and summary judgment is appropriate. Contrary to Plaintiff's assertion, this is a legal, not a factual question. The Court finds that under the *Chevron* Doctrine, the Court must defer to the EPA's interpretation of "determination" for purposes of the relevant statutory section. Under this interpretation, the Plaintiff has failed to show a genuine dispute as to whether the EPA has in fact made that determination. Therefore, Defendants are entitled to summary judgment.

### A.   *Chevron Doctrine and EPA's Interpretation of "Determination"*

The EPA contends that if it were to make a "determination" under section 207(c)(1) of the Clean Air Act, it would do so explicitly and in writing. Defs.' Mot. for Summ. J., Oge Decl. ¶ 5. For its part, the Plaintiff claims the "explicit" and "in writing" requirements are found nowhere in the Clean Air Act, and that discovery will show Defendants have de facto made the

"determination." To resolve the parties' competing interpretations of the Clean Air Act, the Court reviews the EPA's interpretation under the approach articulated by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Sierra Club v. Browner*, 130 F. Supp. 2d 78, 90 (D.D.C. 2001), *aff'd*, *Sierra Club v. Whitman*, 285 F.3d 63 (D.C. Cir. 2002). Initially, the Court must ask whether "Congress has directly spoken to the precise question at issue;" and if so, "the court as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. However, if "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* As long as the agency's interpretation is "reasonable and consistent with the statute's purpose," the Court must defer to the agency's interpretation. *Chemical Mfrs. Ass'n v. EPA*, 217 F.3d 861, 866 (D.C. Cir. 2000).

The Clean Air Act is clear that *if* a determination is made under section 207(c)(1), the EPA must take certain steps. However, the Act is silent as to what qualifies as a determination. The legislative history does not provide any additional guidance. The Conference Report suggests the determination would be made "on the basis of inspections or studies," but does not elaborate further as to the format of the "determination." Conf. Rep. 91-1782, at 10 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5374, 5384. Therefore, the Court must defer to the EPA's interpretation if it is (1) reasonable; and (2) consistent with the statute's purpose.

   1.  <u>Reasonableness</u>

The agency's view of an ambiguous statute controls if "it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed

*most* reasonable." *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 129 S.Ct. 1498, 1505 (2009). The Court finds the EPA's interpretation of "determination" in section 207(c)(1) as requiring an explicit, written finding is reasonable primarily for three reasons. First, the text of the statute supports the EPA's interpretation. Section 207(c)(1) indicates that the manufacturer of non-conforming engines are afforded an opportunity to present evidence at a public hearing to rebut the EPA's determination. If the EPA does not subsequently "withdraw[]" the determination of nonconformity, the manufacturer must take certain steps. The fact that the EPA may "withdraw" a determination implies that the determination was formally made in the first place. It is unclear how the EPA would "withdraw" its determination if it was made by effect from a combination of various factual findings as Navistar suggests. Second, as Navistar's Complaint emphasizes, once the EPA makes a "determination," additional obligations on the part of the EPA and engine manufacturers are triggered. It is entirely plausible that the "determination" would have to be explicit and written in order to trigger such significant consequences, including potentially a recall of the offending engines. Finally, this construction is consistent with the legislative history which indicates Congress expected that the "determination" would be "based on" studies and inspections. Under Plaintiff's interpretation, possession of the studies themselves would amount to a "determination." The EPA's requirement that the agency analyze the data and come to a written conclusion *based* on information including studies, comports with what Congress envisioned.

      2.    <u>Consistency with Statutory Purpose</u>

The EPA's interpretation is also consistent with the purposes of the Clean Air Act. The stated purposes of the Act include "protect[ing] and enhanc[ing] the quality of the Nation's air

resources so as to promote the public health and welfare and the productive capacity of its population," and to "promote *reasonable* Federal, State, and local governmental actions" to achieve pollution prevention. § 7401(b)(1), (c) (emphasis added).  Plaintiff argues that by failing to acknowledge its determination and recall the allegedly offending engines, the EPA's actions are counter to the statutory purpose and allow non-complying engines to remain on the road.  The record indicates otherwise.  The EPA publicly acknowledges that mandatory recalls ordered by the EPA are rare.  *See* Overview of Vehicle Recalls, *available at* http://www.epa.gov/otaq/recall.htm ("Recalls and other remedies are usually conducted voluntarily by the manufacturer, although EPA has the authority to order a manufacturer to recall and fix non-complying vehicles. Most recalls are initiated voluntarily by manufacturers once a potential noncompliance is discovered.").  Rather, the "EPA conducts emissions testing on randomly procured in-use vehicles . . . [and] [i]f problems are found, discussions begin with the manufacturer on possible remedies, which may include a recall of the affected vehicles." *Id.* Working cooperatively with manufacturers to fix issues with emissions systems is entirely consistent, rather than purely adversarial, with the goal of reducing air pollution.  Cooperation between the EPA and engine manufacturers to solve potential emission issues is a reasonable action to help prevent further air pollution.  As a reasonable solution, consistent with the purpose of the Clean Air Act, the EPA's interpretation of "determination" for purposes of section 207(c)(1) is entitled to this Court's deference.

        C.      *Whether the EPA has Made the Relevant Determination*

Having established that the EPA's interpretation of determination is controlling, the remaining question is whether the EPA has in fact made an explicit, written determination that

SCR diesel engines do not conform to the relevant emissions regulations. The EPA provided the declaration of Margo Tsirigotis Oge, the Director of the Office of Transportation and Air Quality, a division of the Office of Air and Radiation of the EPA, indicating that no authorized officer at the EPA has determined that "a substantial number of any class or category of model year 2010 selective catalytic reduction (SCR) equipped engines, 'although properly maintained and used, do not conform to the regulations prescribed under section 202, when in actual use throughout their useful life.'" Oge Decl. ¶ 1, 6. Plaintiff makes two arguments: (1) the EPA has made the determination; and in the alternative, (2) additional discovery is necessary to verify Ms. Oge's claim. Neither argument is persuasive.

1. Whether the EPA has Made the Relevant Determination.

Plaintiff contends that even under the standard articulated by the EPA, the agency has in fact made a written determination that SCR equipped engines violate applicable emissions regulations. Plaintiff specifically points to a public workshop and publication for comment of revised certification requirements for SCR engines for subsequent model years. *See* Pl.'s Opp'n, Ex. 5. Plaintiff argues in essence that by revising the certification requirements for new models of SCR engines, the EPA necessarily admits that there are issues with the Model Year 2010 engines. The EPA explains in detail the flaws in Plaintiff's argument in its Reply brief. *See* Def.'s Reply at 5-10. The Court need not rehash Plaintiff's assertions in detail, for this argument is unpersuasive for two reasons. First, none of the documents cited by Plaintiff explicitly make the finding required by section 207(c)(1). To the contrary, the proposal states that "current SCR systems are highly effective in use." Pl.'s Ex. 5 at 11-12. Moreover, the fact that the EPA has developed new guidelines for the certification of future engines does not by definition mean that

the prior guidelines were inadequate or that prior model year engines did not in fact meet the requisite emissions standards. If new proposals necessarily meant prior engines had to be recalled as Navistar would have the Court hold, the EPA would be forced to either (1) never adapt its methodology to account for increased knowledge regarding emissions technology; or (2) recall all existing engines whenever it made even modest revisions to certification requirements. Second, as the EPA explains, the evidence provided by Navistar indicating the SCR engines are non-conforming, reflect emissions from engines that were not "properly maintained and used," as section 207(c)(1) requires. *See* Pl.'s Opp'n at 7. Even if SCR engines do not meet nitrous oxide emission standards when the system does not contain the proper additive or when the system becomes disconnected, that does not mean the engines fail to meet emissions standards when used properly. *See* Pl.'s Stmt. of Undisputed Facts ¶ 8. Plaintiff provides no evidence that the EPA has determined that SCR equipped engines, when properly maintained and properly used, do not meet nitrous oxide or other emission requirements.

        2.      <u>Plaintiff's Purported Need for Additional Discovery</u>

Plaintiff devotes most of its pleadings to arguing that additional discovery is necessary before the Court can evaluate Defendants' motion. The Court will deny Plaintiff's request as any additional discovery would ultimately be futile. Navistar's counsel states Plaintiff seeks to "elicit testimony from Ms. Oge and other EPA personnel," and documents and materials regarding "the actual or potential non-conformance of [Model Year] 2010 or later SCR engines," "any mandatory or voluntary recall of [Model Year 2010] or later SCR engines (or any consideration thereof," and "any other actual or proposed action to address any non-conformity, failure, problem, malfunction, or production or design defect." Levine Decl. ¶ 12. However,

this case does not involve a factual dispute that documentary evidence might resolve.  Rather, the sole issue in this case is whether the EPA has made a written, explicit determination that Model Year 2010 SCR engines, when properly maintained and used, do not conform to emissions regulations.  The EPA submitted a declaration under oath, from the relevant official, indicating no such determination has been made.  *See* Oge Decl.  There is no reason to believe that any amount of discovery would reveal otherwise.  The Court will not deny summary judgment and allow Navistar to go on a fishing expedition in the EPA's records simply because Navistar is dissatisfied with the fact that the EPA has not made a determination that the EPA is under no obligation to make.  The EPA has not made the relevant determination, and the Court cannot force it to do so.  Any discovery "would be futile and would merely operate to require [the EPA] to participate further in litigation in which it [has] been originally joined solely on the basis of [Navistar's] conjecture."  *First Nat'l Bank of Ariz. V. Cities Serv. Co.*, 391 U.S. 253, 298-99 (1968).

## IV.  CONCLUSION

For the foregoing reasons, the Putative Intervenors' [13] Motion to Intervene is GRANTED.  Defendants' [11] Motion for Summary Judgment Dismissing Complaint for Failure to State a Claim upon which Relief can be Granted is GRANTED.  Defendants' interpretation of "determination" as used in section 207(c)(1) of the Clean Air Act is reasonable and consistent with the purposes of the statute, and therefore entitled to deference by this Court.  Given this interpretation, the EPA has yet to determine that Model Year 2010 SCR engines are non-conforming, requiring the EPA to recall the engines.  Plaintiff's [14] Motion for Discovery Pursuant to Federal Rule of Civil Procedure 56(d) is DENIED.  The discovery requested by

Plaintiff would be futile.  Therefore this case is dismissed in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

Date:   January 17, 2012

                                        _____/s/_____
                                        **COLLEEN KOLLAR-KOTELLY**
                                        United States District Judge